

28 Liberty Street, 30th Floor • New York, NY 10005
Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

December 11, 2019

**VIA CM/ECF**
Hon. Paul G. Gardephe, U.S.D.J.
United States District Court for the
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re: *Pavon v. Forge Restaurant.,* No. 1:19-cv-04008 (PGG)

Dear Judge Gardephe,

We represent the Plaintiff in the above referenced matter. We write to respectfully request judicial approval of the Parties' settlement attached hereto as **Exhibit ("Ex.") A**. The agreement resolves the claims of the named Plaintiff Juan Carlos Pavon ("Plaintiff") for the total amount of $29,451.09. The agreement also calls for $40,548.91 as Plaintiff's attorneys' fees and costs, which were negotiated separately from Plaintiff's individual settlement amount. For the reasons outlined below, the Court should approve this $70,000.00 settlement as a fair and reasonable compromise of their claims against Defendants.

## BACKGROUND & PROCEDURAL HISTORY

Fitapelli & Schaffer, LLP ("F&S") was retained by Plaintiff who worked as a tipped employee at Marc Forgione located at 134 Reade Street, New York, New York 10013. On January 23, 2019, F&S sent a demand letter on behalf of Plaintiff to Defendants advising them of various wage and hour violations and inviting a pre-litigation response. The Parties exchanged informal discovery, and held an in-person meeting at F&S' offices on February 28, 2019. Plaintiff filed this action on May 3, 2019 after the Parties did not reach a resolution. *See* ECF No. 1.

Plaintiff alleges that Defendants, who own and operate Marc Forgione in New York City, did not fully comply with their legal obligations necessary to pay Plaintiff pursuant to the "tip credit" under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *Id.* After Defendants filed their Answer, the Parties prepared for mediation before Stephen Marshall, Esq., an experienced mediator, pursuant to the SDNY mediation program. In preparation for both mediations, Defendants produced over 1,000 pages of documents, along with relevant excel payroll files. F&S utilized this production to evaluate the strength of Plaintiff's claims and Defendants' defenses, along with calculating damages.

The Parties first attended mediation on October 8, 2019, which did not result in settlement. The Parties agreed to participate in a second mediation on November 12, 2019 pending the

disclosure of confidential financial documents from Defendants demonstrating financial hardship. At this second mediation, the Parties agreed to a settlement in principal, and executed a memorandum of understanding. Over the next several weeks, the Parties negotiated and executed the Agreement, which was fully executed on December 9, 2019. *See* **Ex. A**, Settlement Agreement.[1]

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the payment of $29,451.09 to the Plaintiff was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

Factor one weighs in favor of approval. Based on the payroll provided, Plaintiff's range of possible recovery was between $0.00 and $39,849.45 – representing base minimum wages, overtime wages, and misappropriated gratuities ($17,424.73), NYLL liquidated damages ($17,424.73), and statutory penalties under the NYLL § 195(3) ($5,000.00). The $29,451.09 settlement amount to Plaintiff therefore provides 100% of Plaintiff's base owed wages, along with 53.6% of Plaintiff's potential liquidated damages and WTPA statutory penalties. Based on the litigation risks discussed below, especially regarding Plaintiff's claim for liquidated damages and WTPA statutory damages, the total settlement of $29,451.09 is more than an excellent result.

Factors two and three also favor approval. If the Parties were to continue litigation, the Parties would need to conduct depositions of all parties, including corporate representatives for

---

[1] The agreement calls for a payment plan of a lump sum payment of $35,000 payable 30 days after the Court approves the settlement, followed by four equal payments of $8,750 each subsequent 30 days. The agreement also calls for corporate and personal confessions of judgment.

Defendants. Moreover, in the event the Court granted Plaintiff's 216(b) Motion, further collective-wide discovery would need to occur. Defendants would then, after discovery, move to decertify the collective and would oppose Plaintiff's Rule 23 Class Certification motion. This would require further legal briefing from both sides. As such, further litigation would require significant time and expense.

In addition, both sides face serious litigation risks relating to damages and liability. Unlike in many wage and hour restaurant cases, Defendants at all times paid its tipped employees at the correct "tipped" minimum wage, paid its workforce for all hours worked, and provides wage notices and wage statements that they argued fulfilled their legal obligations. As a result, while Plaintiff believes he could establish liability based on alleged deficiencies in Defendants' paperwork, there is a large risk that the Court could view the paperwork as compliant.[2]

Moreover, this Agreement is significant given the risks of continued litigation – most notably, collectability. Defendants' financial position means that Plaintiff may have difficulty recovering or collecting more should he prevail on his claims at trial. Defendants produced to F&S personal and business income tax returns, which demonstrated financial hardship. In F&S' opinion and experience, these documents demonstrate a real inability to pay a significantly greater judgment. These collectability issues are also evidenced by the Agreement's payment installment structure, which would not have been agreed to but for this evidence of real financial hardship. As such, this weighs in favor of approval. *See Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (issues of collectability weighed in favor of approval where "the sincerity of the parties' concern [was] demonstrated by defendants' consent to a confession of judgment" for breach of the settlement agreement).

Factors four and five also weigh in favor of approval. Both Plaintiff's counsel and Defendants' counsel have negotiated at arm's length, as evidenced from the length of the negotiation and litigation process, and have significant experience handling wage and hour claims. *See* **Ex. B**, F&S Qualifications. In addition, there is no fraud and collusion as the Settlement amount represents a significant percentage of Plaintiff's potential recovery – 100% of his base owed wages and 53.6% of his potential liquidated damages and WTPA statutory penalties.

Last, the red-flag issues identified in *Cheeks* are not present here. The agreement does not contain a confidentiality clause and contains a mutual general release. **Ex. A** ¶ 4. Moreover, as will be discussed below, F&S' requested attorneys' fees are not excessive or constitute more than a third contingency interest in the settlement. As a result, Plaintiff respectfully requests that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

---

[2] In addition, Defendants continuously disputed the existence of a dedicated expeditor at Marc Forgione, which formed the basis of Plaintiff's tip misappropriation claim.

Case 1:19-cv-04008-PGG-SN Document 46 Filed 03/30/20 Page 4 of 5
Case 1:19-cv-04008-PGG-SN Document 45 Filed 12/11/19 Page 4 of 5

Fitapelli & Schaffer, LLP
December 11, 2019
Page 4 of 5

## THE COURT SHOULD APPROVE THE NEGOTIATED ATTORNEYS' FEES AND COSTS

Under the FLSA and NYLL, a prevailing plaintiff is entitled to their reasonable attorneys' fees and expenses. 29 U.S.C. § 216(b); NYLL § 663(1). "Awarding attorneys' fees in this context is meant to encourage members of the bar to provide legal services . . . but for the separate provision of legal fees, many violations of the FLSA would continue unabated and uncorrected." *Zamora v. One Fifty Fifty Seven Corp.*, No. 14 Civ. 8043 (AT), 2016 WL 1366653, at *2 (S.D.N.Y. Apr. 1, 2016).

One of the red-flag issues identified in *Cheeks* were contingency agreements over 40% of the plaintiff's recovery. 797 F.3d at 206. This red-flag is not present here because F&S will not be taking any contingency from the Plaintiff's settlement amount, as counsel negotiated the requested attorneys' fees and costs separate and apart from Plaintiff's settlement. The retainer agreement and consent forms executed by the Plaintiff indicates that counsel has the option to receive the higher of a 33 1/3% contingency *or* attorneys' fees negotiated separately or calculated with the lodestar method. Additionally, Plaintiff executed the Settlement Agreement, which outlines the amount payable as attorneys' fees and costs. *See* **Ex. A** ¶ 1.

The attorneys' fees request is fair and reasonable. As discussed above, this is not a low value settlement for Plaintiff – he is receiving more than 100% his base owed wages and 53.6% of additional penalties. Moreover, during the negotiation process, F&S identified and negotiated their attorneys' fees and costs apart from Plaintiff's individual damages and award. *See Zamora*, 2016 WL 1366643, at *2 ("[I]n an individual FLSA action where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorneys' fees." (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Courts in the Second Circuit and this District have approved attorneys' fees awards negotiated separate and apart from the plaintiff's recovery, especially where the plaintiff obtains such an excellent result based on their potential damages. *See, e.g.*, **Ex. C**, *Baggett v. 365 Seki, Inc.*, No. 1:18 Civ. 06645, ECF No. 53 (S.D.N.Y. Aug. 6, 2019) (Gardephe, J.) (approving $33,000 to three plaintiffs and $75,000 in attorneys' fees and costs); *Flores v. Steinway Dental Lab., Inc.*, No. 15 Civ. 4364, 2017 U.S. Dist. LEXIS 20710, at *4-*5 (E.D.N.Y. Feb. 14, 2017) (approving $21,500.00 payable to the plaintiff and $21,000.00 payable as attorneys' fees and costs); **Ex. D**, *Ali v. David Bouley LLC*, No. 14 Civ. 07135, ECF No. 70 (S.D.N.Y. Oct. 18, 2016) (approving $40,000.00 between the two plaintiffs and $57,500.00 in attorneys' fees); *Delilar v. Foodfest Depot, LLC*, No. 15 Civ. 0459, 2016 WL 3452797, at *1-*2 (S.D.N.Y. June 14, 2016) (approving $35,000.00 payable to the plaintiff with $65,000.00 allocated for attorneys' fees); **Ex. E**, *Saldivar v. Aki Renovations Group, Inc.*, No. 15 Civ. 03130, ECF Nos. 38, 36-2 (E.D.N.Y. Feb. 10, 2016) (approving $18,121.61 to the four plaintiffs and $30,000.00 as attorneys' fees); **Ex. F** *Trimmer, et al. v. Barnes & Noble, Inc., et al.*, No. 13 Civ. 579 (JGK), ECF No. 89 (S.D.N.Y. May 21, 2015) (Order and Letter approving of $223,270.00 in attorneys' fees that were negotiated separate from plaintiffs' recovery, which collectively equaled approximately $37,500.00); *Zamora*, 2016 WL 1366653, at *2 (approving $56,843.00 to the plaintiff and $71,657.00 in attorneys' fees).

Case 1:19-cv-04008-PGG-SN Document 45 Filed 12/11/19 Page 5 of 5

Fitapelli & Schaffer, LLP
December 11, 2019
Page 5 of 5

   A cross check of the requested fee award also supports approval because the requested $40,548.91 is less than F&S' current lodestar. As of the date of this letter, F&S has expended $46,247.50 in attorneys' time prosecuting this action and $735.42 in out-of-pocket expenses.[3] These hours were compiled from contemporaneous time records maintained by each attorney participating in the case and are reasonable for a case that has contained an in person attorney meeting and preparing for and attending two mediations. In addition, this request is inclusive of Plaintiff's Counsel's out-of-pocket litigation costs of $735.42. *See* **Ex. B**.

   As a result, the requested attorneys' fees and costs are fair and reasonable because they were negotiated separately and where F&S secured an excellent result for Plaintiff.

*  *  *

   For the above reasons Plaintiff respectfully requests that the Court approve the attached Settlement Agreement and sign and enter the Stipulation dismissing the case with prejudice, attached as **Appendix A** to the Settlement Agreement.

   We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ Brian S. Schaffer*

Brian S. Schaffer

CC: Defendants' Counsel (via ECF)

MEMO ENDORSED
The parties' settlement agreement is approved by the Court.

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

March 27, 2020

---

[3] For a breakdown of the attorney time and rates and expenses, please see **Exhibit B**.